## ROSALINDA REDDING v. CURTIS H. LAMB.

*Deed—Covenants—Construction—Pleading—Recoupment—Failure of title—Taxes—Certificate of supervisor—Evidence.*

1. Two daughters owned a parcel of land as heirs of their father, subject to the dower rights of their mother. The mother and *one* of the daughters executed and delivered a deed of the land, in the commencement of which, and in the covenants of warranty, all *three* were described as grantors, and as "widow and heirs" of the deceased husband. The granting clause and the covenants were in *form* joint. And it is held that the covenants were *several*, and were not broken by the refusal of the *other* daughter to execute the deed.

2. How. Stat. § 1058, which makes the tax roll, when filed in the office of the county treasurer, evidence in the same manner and with like effect as the assessment roll of which it is a copy, does not make the supervisor's certificate of assessment,

if found on such *tax* roll, evidence, such certificate being no part of *such* roll.[1]

3. The general rule is that damages for breach of covenant of seisin are only recoverable in an action for such breach; but no good reason is seen for the application of this rule where in an action to recover the purchase price of the land a failure of title is shown.

Error to Berrien. (O'Hara, J.) Argued May 15, 1890. Decided June 6, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*O. W. Coolidge* and *Edward Bacon,* for appellant, contended:

1. The grant is joint, as are the covenants, and the entire premises are described in the deed. The word "we" is used to make a joint covenant of warranty. There can be no mistake that the intention was to have it apply to the entire premises, and that each signer should be in like manner bound. Any other construction would take from the covenant its natural meaning.

2. The plaintiff affirmed the deed, with full knowledge of all material facts, by advising the defendant to take possession thereunder, and by commencing this suit to recover the full amount of the unpaid purchase money. She testifies that she intends to collect the note in full, and this leaves no possible doubt of her intention to insist on the note as written, or of defendant's right to insist on the deed as written. The two instruments must be read together; they belong to the same transaction, and to declare the validity of the one as written is to declare the like validity of the other; citing *Sutton v. Beckwith,* 68 Mich. 310, and cases cited; *Jacobs v. Miller,* 50 Id. 127.

3. Defendant's claim of recoupment is within How. Stat. § 7371, and his notice insists on all his rights of recoupment; citing *Allen v. McKibbin,* 5 Mich. 449; *Platt v. Brand,* 26 Id. 173; *Widrig v. Taggart,* 51 Id. 103; *Gage v. Meyers,* 59 Id. 305; *Mimnaugh v. Partlin,* 67 Id. 393; *Wickes v. Light Co.,* 70 Id. 323; *Sinker v. Diggins,* 76 Id. 563; and the fact that the deceased daughter had joined in the deed cannot deprive defendant of such rights; citing *M'Hardy v. Wadsworth,* 8

---

[1] See *Hecock v. Van Dusen,* 80 Mich. 359.

Mich. 349; which rights are none the less because the sale was of real estate; citing *Dickinson v. Wright*, 56 Mich. 48; *Wright v. Dickinson*, 67 Id. 580; *Baughman v. Gould*, 45 Id. 481; *Gordon v. Parmelee*, 15 Gray, 413; *Black v. Ridgway*, 131 Mass. 80; *Curtis v. Clark*, 133 Id. 509; *Payne v. Cutler*, 13 Wend. 605; and no covenant in the deed could render such rights unavailable to defendant; citing *Scadin v. Sherwood*, 67 Mich. 232; *Cook v. Mix*, 11 Conn. 432; *Schuchmann v. Knoebel*, 27 Ill. 175; *Fletcher v. Button*, 4 N. Y. 396.

4. The findings show that the deed was delivered on the understanding of all interested in the transaction that Eva Jakeways would duly execute the deed, which carries on its face the representation of plaintiff that such understanding should be carried into effect; and the failure so to do gave the defendant rights of recoupment; citing *Dikeman v. Arnold*, 78 Mich. 455; which are none the less because the plaintiff believed her representations; citing *Baughman v. Gould*, 45 Mich. 481; *Holcomb v. Noble*, 69 Id. 399.

*Van Riper & Worthington,* for plaintiff, contended:

1. Defendant could not recoup for breach of warranty in this action, but his remedy was an action for breach of the covenants in his deed. Nearly all of the cases cited by defendant's counsel relate to personalty, and in the other cases, claimed to cover the sale of real estate, the defense was not founded on the breach of the covenants in a deed, for which the defendant sought to recoup damages.

2. In *Leal v. Terbush*, 52 Mich. 100, a party sought to recover back money paid because of mistake, where plaintiff supposed the vendor had title in fee instead of a life-estate; and the Court held that his remedy was on the covenants in his deed.

LONG, J. This is an action of *assumpsit,* and was tried before the court without a jury. The action was upon a promissory note. Defendant pleaded the general issue, and gave notice of certain matters of recoupment, which are sufficiently set out in the findings of the court below, which are substantially as follows:

" 1. Benjamin Wilson, who died intestate, was seised in fee, at the time of his decease, of 40 acres of land in Berrien county, Mich., being the N. E. ¼ of S. W. ¼ of sec. 13, town 8 S., R. 19 W.

" 2. On March 13, 1885, Emma C. Pierce and Eva V. Jakeways,

being the only heirs of decedent, owned an undivided half each of said lands, subject to plaintiff's right of dower, who was the widow of decedent, and her dower never having been assigned.

"3. Plaintiff and the two heirs in question had agreed to sell the land to Jacob Imhoff for $1,500, and in anticipation thereof a deed had been executed by plaintiff and Mrs. Pierce, but not delivered. Mrs. Jakeways was to have joined in the execution of the deed on March 13, 1885, upon which the deed was to be delivered to Imhoff at the village of Buchanan. The deed contained three covenants, viz., of seisin, against incumbrances, and of warranty. Plaintiff was described as widow, and the other two grantors as heirs, in such deed.

"4. Plaintiff and Mrs. Pierce resided in the village of New Troy, and about nine miles north-west of Dayton, where the defendant lived. Mrs. Jakeways' residence was a few miles to the south of Dayton.

"5. Defendant learned of the contemplated sale to Imhoff through the husband of Mrs. Jakeways, and, being desirous of securing the land himself, because of the timber growing on it, accompanied Jakeways to the village of New Troy on March 13, 1885, to accomplish such purpose.

"6. Upon reaching the village, they met plaintiff and Mrs. Pierce, and also the husband of the latter. After some haggling over the price, the two women present were induced to sell to the defendant rather than to Imhoff; the price agreed upon being $1,550. The land was wild and uncultivated, and it was understood by those present that defendant was led to purchase the land because of the timber on it, and that he was anxious to secure the entire tract.

"7. The defendant believed that plaintiff owned one-third of the land in her own right, and that the two heirs owned one-third each. It does not appear that plaintiff was apprised of this belief, nor does it appear that defendant was led to entertain it by reason of any representations made by Mrs. Pierce or her mother. Defendant made no inquiries of plaintiff as to the extent of her individual interest in the land, but contented himself by asking her whether the title to the land was perfect. Plaintiff, believing that the question referred to the strength and validity of the title in her two daughters, and to her right to claim dower, assured him that the title was perfect, upon which assurance defendant relied, and waived the production of an abstract of title.

"8. It seems to have been believed by all present at the time that Mrs. Jakeways would join in the execution of the deed when presented to her, as a matter of course; and her refusal, nor yet a possibility thereof, does not appear to have been anticipated by

even the defendant. While it is evident that defendant was led to this belief by reason of assurances given by Mrs. Jakeways' husband, Mrs. Jakeways had not authorized her husband to act for her. Nor did either Mrs. Pierce or the plaintiff assure defendant that Mrs. Jakeways would sign the deed. While all believed that the latter would execute the deed, those actually executing it intended thereby to convey outright their several interests in the land to the defendant, independent of anything Mrs. Jakeways might do, or without meaning to either profit or incur liability by reason of any default upon the part of the latter. There was no intention on either side to cancel the entire deed in case of such default.

"9. Instead of drafting a new one, the Imhoff deed was brought into requisition, and made to do service. The amount of consideration and name of grantee appearing in such deed were changed to correspond with the new arrangement, upon which the plaintiff and Mrs. Pierce duly acknowledged in the premises, although their names had been previously signed thereto.

"10. At the suggestion of Mrs. Pierce's husband, the purchase money was to be equally divided between the widow and the two heirs. Defendant was not a party to such arrangement; he having offered $1,550 for the forty acres, and being willing to pay such, regardless as to how it might be divided between the three vendors.

"11. Defendant paid $516.66 in cash, which, under the arrangement already indicated, was appropriated by Mrs. Pierce. Two other notes of like amount each, viz., $516.66, were drafted by Mr. Pierce; one running to Mrs. Jakeways, and the other to the plaintiff. The latter note, which is the one declared on in this suit, was duly signed and delivered by defendant, and was as follows:

" '$516.66-100.                    NEW TROY, March 13, 1885.
" ' Eighty days after date I promise to pay to Rosalinda Redding or bearer five hundred and sixteen and 66-100 dollars, at seven per cent. from date, value received.
                                        " 'C. H. LAMB.'

"A mistake was discovered in the other note as drafted, whereupon defendant declared he would take the deed home with him, and 'fix the matter up with Jakeways;' that they would attend to the second note; and that he might want a year in which to make the third payment. Upon this representation the third note was not executed on March 13, and the deed was delivered to defend-

ant. Within ten days after March 13, 1885, said Emma C. Pierce died at her home aforesaid.

"12. By arrangement made between defendant and Jakeways, the latter was to secure his wife's signature to the deed in a day or two, when a note of $516.66 was to be executed and delivered therefor.

"13. Defendant admits that the market value of the land, March 13, 1885, was $2,500.

"14. Mrs. Jakeways never executed the deed to defendant, nor did the latter ever request her to do so. Her husband, however, in pursuance of the arrangement indicated in finding 12, requested her to go to Dayton about March 17, 1885, and execute the deed; but this she refused to do, insisting that Imhoff was entitled to the land, and that she should not disappoint him.

"15. On March 17, 1885, Mrs. Jakeways conveyed her interest in the land to Imhoff for $616.

"16. The land in question was sold for delinquent taxes for the year 1877, and the Auditor General of the State executed a deed on November 1, 1883, in which was conveyed the entire 40 acres to one Franklin Parker.

"17. The supervisor's certificate attached to the copy of assessment roll of the township in which such land is situate, and which roll is the one filed in the county treasurer's office, for the year 1877, is as follows:

"'I hereby certify that I have set down in the within assessment roll all the real and personal estate in the township of Galien not exempt by law from taxation, according to my best knowledge and belief, and that I have assessed it at what I believe to be the true cash value thereof.

"'Dated May 7, A. D. 1877.

"'PERRY NOGGLE, Supervisor.'

"18. On March 19, 1885, Franklin L. Parker and wife conveyed such land by quitclaim deed to Imhoff.

"19. Parker had never been in possession of the land.

"20. Immediately upon securing the Parker deed, Imhoff went into possession of the entire 40 acres.

"21. Defendant saw plaintiff about this time with reference to Mrs. Jakeways' action in the premises, and was told by plaintiff that she regretted her daughter's refusal to execute a deed to him. She also advised defendant to take possession of the land. Defendant tried to take possession of the land about March 27, 1885, but was prevented therefrom by Imhoff, who also continued in the pos-

session of such land, to the exclusion of defendant, until January 15, 1886.

"22. The action of Mrs. Jakeways was without either the knowledge or approval of plaintiff or Mrs. Pierce.

"23. Defendant's deed was duly recorded March 27, 1885.

"24. Imhoff and his wife conveyed by warranty deed to the defendant the undivided one-half of the 40 acres in question on January 15, 1886; and on the same day they executed a quitclaim deed to him by which they conveyed all their interest in the undivided half theretofore conveyed by Mrs. Pierce. For the undivided half, defendant paid $1,000. The consideration recited in the quitclaim deed is a nominal one.

"25. On January 15, 1886, the fair market value of the 40 acres was $2,500.

"26. On September 20, 1885, defendant made a lawful tender of $95 to plaintiff, who was then 65 years of age.

"27. It is admitted by counsel that the value of plaintiff's right of dower in the 40 acres was $95. Assuming the value to have been $1,550 instead of $2,500 (the value placed upon the land by the defendant himself), it would seem that the value of plaintiff's dower right on March 13, 1885, was $289.10; the annual interest on one-third of $1,550 being $36.17, and her expectation of life being 11.10 years. Assuming that interest did not fall due annually, but that the entire amount, viz , $401.44, would not fall due until after 11.10 years, the present value would still largely exceed the amount agreed upon, and would amount to $225.90.

"28. The note in suit had no other consideration than that already indicated.

"29. No part of the principal of the note in suit, or interest thereon, has been paid, and the total amount of principal and interest at this time is $658.60. On March 11, 1889, such principal and interest will amount to $661.12.

"30. Accepting, as under the stipulation to that effect must be done, the value of dower on March 13, 1885, to have been $95, the plaintiff and Mrs. Pierce were entitled to $822.50 of the $1,550 agreed to be paid by defendant for the 40 acres.

"From the foregoing facts, I find the following conclusions of law:

"1. Plaintiff is entitled to recover the difference between $822.50

and the amount paid in cash on March 13, 1885, viz., $516.66; such difference being $305.84.

"2. Plaintiff is entitled to recover interest on $305.84 at 7 per cent. per annum from March 13, 1885.

"3. The tax deed was void.

"4. The tax deed being void, plaintiff cannot be held liable for defendant's eviction.

"5. Neither plaintiff nor Mrs. Pierce can be held liable for any act of Mrs. Jakeways. Each conveyed merely her whole interest in the land, and there were no breaches of covenant.

"6. Judgment will be entered in favor of the plaintiff and against the defendant for $391.35, on the next day of our regular sitting, viz., March 11, 1889; such to be in full satisfaction of the note in suit, there having been no consideration for the note beyond the value of Mrs. Pierce's and plaintiff's combined interests in the land March 13, 1885, viz., $822.50, of which $516.66 was paid at the time."

Judgment was entered according to said findings, and afterwards, within the time allowed therefor, the counsel for the defendant alleged exceptions to the findings. Many exceptions were filed to the findings of fact of the court below, and 30 errors are assigned by defendant's counsel. No fraud in fact is shown or found; and, aside from the questions arising under the tax title procured by Imhoff, the case must be determined upon a construction of the deed given by Mrs. Redding and Mrs. Pierce. Certain facts are admitted upon the record, and whether the testimony warranted the findings of fact made by the court below cannot matter if, upon the admitted state of facts, the plaintiff was entitled to recover the sum for which the judgment was rendered. The plaintiff did not appeal, and rests satisfied with the amount of recovery.

The theory of the defense is that the covenants in the deed bound the plaintiff to procure a conveyance of the title held by Mrs. Eva Jakeways, and upon her failure so to do the defendant was entitled to set up the damages occasioned thereby by way of recoupment to the note, and

that the covenant of title was broken by reason of the title outstanding which is represented by the Auditor General's deed.

The errors relied upon in this Court are stated in the brief of counsel as follows:

"1. The court erred in disregarding all the appellant's claims in relation to the interest of Eva Jakeways.

"2. The court erred in holding that the plaintiff was not liable for any loss to the appellant concerning the interest of Eva Jakeways.

"3. The court erred in not making and allowing sufficient deduction in favor of appellant.

"4. The court erred in holding the Auditor General's deed to be void."

The first and second points of counsel may be considered together. It appears that the plaintiff and her two daughters agreed to sell the land to Imhoff for $1,500, and the deed had been drawn and executed by the plaintiff and her daughter Mrs. Pierce, Mrs. Jakeways not yet having signed it; and it had not yet been delivered and no payments had been made. The defendant, learning of this transaction, and in order, as he says, to get even with Imhoff, agreed, if they would let him have the land, to pay $50 more. No new deed was drawn, but the name of Mr. Imhoff was stricken from the deed, and that of the defendant inserted. Mrs. Jakeways was not there, but her husband was present, and represented her. It appears that the plaintiff and her two daughters had before that time agreed upon the proportion each was to have out of the purchase money; that is, each was to have one-third. It is now claimed by counsel that the defendant supposed that the plaintiff owned one-third of the land in her own right. The court, however, finds— and there is testimony supporting this finding—that—

"It does not appear that plaintiff was apprised of this belief, nor does it appear that defendant was led to entertain it by reason of any representations made by Mrs.

Pierce or her mother. Defendant made no inquiries of plaintiff as to the extent of her individual interest in the land, but contented himself by asking her whether the title to the land was perfect."

It is also apparent that all the parties then believed that Mrs. Jakeways would execute the deed when produced to her. Acting upon this assumption, the defendant paid Mrs. Pierce her share, and gave to the plaintiff the note in suit as the amount going to her. Mr. Arnold Pierce, who was present, representing his wife, Mrs. Emma C. Pierce, one of the grantors in the deed, says that, after the note was given, Mr. Lamb stated:

"You need write no note for Mrs. Jakeways. Give me the deed just as it is, and I will take it home; and Jakeways is going back with me, and we will fix it up to suit ourselves. May be I will want time on it, and will pay him interest;"—

And that the defendant put the deed in his pocket, and went away. Under these circumstances which surround the transaction in giving the deed, it is manifest that none of the parties regarded the covenants in the deed as covenants upon the part of Mrs. Pierce or the plaintiff to convey, or to procure to be conveyed, the title held by Mrs. Jakeways.

Aside from these circumstances, however, the deed bears upon its face a contradiction of the assertion of defendant's counsel. The deed purports to be an indenture between Rosalinda F. Redding, Emma C. Pierce, and Eva V. Jakeways, widow and heirs of Benjamin Wilson, deceased, and Curtis Lamb. The covenants are stated as follows:

"And the said Rosalinda F. Redding, widow, and Emma C. Pierce and Eva V. Jakeways, heirs aforesaid, of Benjamin Wilson, deceased, parties of the first part, their heirs, executors, and their administrators, does covenant, grant, bargain, and agree to and with the said party of the second part, heirs and assigns, that, at the

time of the ensealing and delivery of these presents, well seised of the above-granted premises in fee-simple; that they are free from all incumbrances whatever; and that we will, and our heirs, executors, and administrators shall, warrant and defend the same against all lawful claims whatsoever."

Aside from the tax deed, as before stated, there is no claim made at this time but that Rosalinda F. Redding, Emma C. Pierce, and Eva V. Jakeways were well seised of the premises in fee; the plaintiff's interest being· that of·widow of Benjamin Wilson, and the other two as his heirs at law. That is, the deed itself sets out the interest of the grantors in the premises. This covenant of title cannot be construed as the joint covenant of all, but is to be interpreted with other parts of the deed; and, being so interpreted, it is made manifest that none of the parties executing it did convey, or intend .to convey, the interest held by Eva V. Jakeways.

While the rule in construing covenants is to construe them most strictly against the covenantor, and most favorably to the covenantee, yet the rule should be carefully observed that covenants are to be construed as nearly as possible by the obvious intention of the parties, which must be gathered from the whole context of the instrument, interpreted according to the reasonable sense of the words. None of the parties to the instrument understood that the parties who actually signed were making any covenant to convey the interest of Mrs. Jakeways. The defendant himself was to look after and obtain her signature. He took the deed away with the understanding that he would get it executed by her, and wanted to make some arrangement for further time for payment than was first talked. The court was not in error in holding that defendant had no right to recoup damages by reason of the failure of Mrs. Jakeways to sign the deed. While the court was in error in attempt-

ing to compute the present value of the plaintiff's interest in the premises, yet the plaintiff is not here complaining, and we cannot disturb the finding, or add to the amount of the judgment. But it appears very plainly that under the arrangement the plaintiff was to have an equal one-third of the moneys coming from the sale. The parties had all agreed upon that division under the Imhoff sale, and the defendant took the deed knowing how much was going to each. Certainly the defendant is not in a position, in this Court, to complain of the amount of the judgment.

The only remaining question relates to the tax deed. It appears that the lands were sold for delinquent taxes for the year 1877, and the deed executed November 1, 1883. To show the invalidity of this deed, the tax roll found in the office of the county treasurer was put in evidence by the plaintiff. Indorsed on this roll was the following certificate:

"I hereby certify that I have set down in the within assessment roll all the real and personal estate in the township of Galien not exempt by law from taxation, according to my best knowledge and belief, and that I have assessed it at what I believe to be the true cash value thereof."

This certificate is not in the statutory form, nor does it contain the substance of what the statute requires. *Clark v. Crane,* 5 Mich. 151; *Silsbee v. Stockle,* 44 Id. 566; *Dickison v. Reynolds,* 48 Id. 158; *Sinclair v. Learned,* 51 Id. 343; *Gilchrist v. Dean,* 55 Id. 244. But it is contended by counsel that the certificate is no part of this tax roll, and its being indorsed thereon is no evidence that a proper certificate was not indorsed upon the assessment roll to be kept in the office of the supervisor. Under section 1002, Comp. Laws of 1871, the supervisor is required to deliver to the treasurer a copy of his assessment roll. It is also provided by section 1023 of this

statute that after the payment of the taxes to the county treasurer—

"The township treasurer shall immediately deposit his tax roll and warrant with the county treasurer, who shall file and preserve the same in his office, and which said roll, or a duly-certified copy thereof, shall for all purposes, in all courts, suits, and proceedings, be taken, held, and used as evidence in the same manner and with like effect as the original roll."

But this statute does not make the certificate to the tax roll evidence. Section 1129 provides that—

"No sale of real estate for non-payment of the taxes thereon shall be rendered invalid by showing that any paper, certificate, return, or affidavit required to be made and filed in any office is not found in the office where the same ought to be filed or found; but, until the contrary is proven, the presumption shall be, in all cases, that such certificate, paper, return, or affidavit was made and filed in the proper office."

The certificate being no part of the tax roll, as held in *Sibley v. Smith*, 2 Mich. 487; *Tweed v. Metcalf*, 4 Id. 599; *Clark v. Axford*, 5 Id. 182; *Boyce v. Sebring*, 66 Id. 216, —it follows that the fact of such a certificate being found upon the tax roll would not raise the presumption that the assessment roll did not contain the proper certificate. The statute above quoted does not' make this certificate evidence, but only the tax roll itself, of which the certificate is no part. The court was therefore in error in holding the tax deed void.

The case, however, was tried mainly upon the theory that the note was given without consideration, by reason of breach of covenant in the deed as relating to the title of Mrs. Jakeways. As we have said, this deed cannot be so construed.

It is contended that whatever rights the defendant may have had under the tax deed cannot be set up by way of counter-claim, and damages recouped in this form of

action.    Counsel for defendant cite cases which they claim sustain the doctrine that such damages may be recouped in this form of action, and claim that defendant ought not to be remitted to an action of covenant. He received a conveyance which gives him present seisin of the interest which the plaintiff and Mrs. Pierce conveyed, with covenants which assumed to protect him in the enjoyment of that interest.    He purchased in a pretended outstanding title, and seeks to set it up as a defense in an action of *assumpsit* brought to recover the purchase price of the land.    The general rule is that damages for breach of covenant of seisin in a conveyance of land are only recoverable in an action for breach of covenant, as titles to lands are not properly triable in actions of *assumpsit;* but I can see no good reason for remitting a party to another action, where the action is brought to recover the purchase price of the land sold, and there is failure of title.    If the title has failed absolutely, then there is no consideration for the note, and the money recovered thereon would have to be repaid when the facts were established in an action for breach of covenant.    We are not satisfied, however, that the facts are sufficiently presented to warrant us in entering judgment in this Court for defendant as for a total failure of consideration.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.